Good morning, Your Honors. Kelly Hammond appearing on behalf of Sergeant Baughman. Excuse me, I'm sorry, who's Baughman? G.A. Chief. There's an F on that. Okay. May it please the Court. The issue on appeal is whether the district court erred by denying Sergeant Baughman qualified immunity on Lyons' claim that Baughman violated his Eighth Amendment right to be by failing to protect him from a serious risk of violence at the hands of other inmates. Viewing the facts in a light most that benefits Mr. Lyons, the facts establish that in September 1996, there was Mr. Lyons was housed at California State Prison, Sacramento, where Sergeant Baughman worked as the B facility sergeant. There was a rumor in September 1996 that Hispanic inmates were planning an attack on black inmates. Sergeant Baughman, along with other correctional staff, interviewed several inmates to try and verify the rumors. The rumors could not be verified. Sergeant Baughman, as well as his commanding officer, Captain Walker, informed the black inmates or the leaders of the black disruptive groups, one of which was Mr. Lyons, who was a shot-caller for the Bloods. Excuse me, Counsel. May I just ask, what is the custom or practice when there is a report that something might happen, there might be retaliation and so forth, is it documented? Is there any requirement the officers indicate, put in the file, there's been a threat against Mr. Lyons or a potential retaliation? If he knows of a potential threat against Mr. Lyons, yes. Generally, they fill out what's an informational chrono that would establish to other people that would somehow eventually look at the file that, in fact, there was a threat against this particular inmate. In this case, however, it appears that of all the defendants in this case, the only defendant to whom Mr. Lyons never declared that he had a fear for his safety was Sergeant Baughman. All of the other in the other defendants in this case have been dismissed. The one remaining defendant is Sergeant Baughman, and the judge found that based on Sergeant Baughman's knowledge that Mr. Lyons was a shot-caller, he should have known that there was a substantial risk to his safety. Why isn't that a credible finding? For two reasons. As I just stated, number one, Mr. Lyons never told Sergeant Baughman that he feared for his safety. Well, wouldn't it be evident, though, to an experienced prison guard that if he's told this fellow that, go tell your folks there's no risk and a riot ensues, contrary to the information that Baughman may have in good faith believed, that it wouldn't be obvious that Lyons would be exposed to retaliation? He might be exposed to retaliation. However, Mr. Lyons was initially sent out to the hospital for he received a puncture wound to his back during the assault. When he came back, he was no longer on the yard where Sergeant Baughman worked. He had been placed in protective custody already, not in protective custody, but in administrative segregation, where he was segregated from those inmates that Sergeant Baughman knew were on B facility who might retaliate against him. But if he's in administrative segregation, as you describe it, it's not because the prison authorities thought that he feared retaliation. He's in an ad seg because they didn't like what he did during the riot. Isn't that right? Well, no, not initially. They initially found that Mr. Lyons was put in administrative segregation because he had been the victim of an assault. It was only later, during the watching of the videos of the riot itself, that they found that Mr. Lyons had actually encouraged attacks on staff at that time. And how long a period was he in administrative segregation before the prison authorities learned that he'd, in fact, from watching the videos, that he'd, in fact, encouraged some of the assaults on the prison guards? As I recall, Your Honor, it was approximately a month before they realized that he had actually encouraged participation in the riot. But prison officials not only kept him in administrative segregation, they initially assigned him to a walk-alone yard for his own protection. He was later assigned to a mixed-reintegrated yard where he was also kept with certain inmates that have safety and security needs. It was only after they determined that he could no longer be housed, Mr. Lyons wanted to be housed on A facility, but he had known enemies there. He had, as a shot caller, called shots on certain of the inmates that were in protective custody on Facility A. So at that point, there was a decision made by certain members of the staff, not including Sergeant Boffman, that he could be safely housed at Pelican Bay State Prison. And he made it quite clear that he didn't agree with that assessment. He did, Your Honor. He did make it clear. He papered up. But the fact remains that when they did go to try and talk to Mr. Lyons about his concern, he still refused to talk to anybody that was there. Lieutenant Hill, who was there at the time, brought down one of the administrators to try and address Mr. Lyons' concerns and try to discuss them with him. Mr. Lyons refused to talk to, I believe it was Captain Broderick that they brought down. But was anything put in his record? Because there was certainly a likelihood that this risk would follow him wherever he was transferred. Well, there was certain things kept in his record. And part of that was the fact that Mr. Lyons submitted grievances to certain prison officials, the other named defendants in this case. And those grievances, along with the responses and the certain acts that they had taken, remained in his central file. So while it wasn't documented on a chrono, an informational chrono that would generally inform people of what his status was, it was, in fact, generate or in his central file in the form of those 602s, those grievances that he had filed and the responses that had been supplied. I think, but is there anything that's in the record to show that people go through the whole file when there's a transfer that takes place, nothing to put the new prison on notice that he was in danger? Actually, the gentleman, I believe it was Mr. Redden at Pelican Bay, when Mr. Lyons informed him of his safety concerns, said he did, in fact, go through Mr. Lyons' file. And he could not find anything that Mr. Lyons was housed in protective custody. That's because Mr. Lyons was never housed in protective custody. He was housed in administrative segregation. Thank you. Even though by your representation, the first month of his housing in administrative segregation was for protective purposes, but it wasn't stated in his file that that's why it was done? Actually, the initial 115 or the initial lockup order says that he was placed in administrative segregation due to being the victim of an assault. But that didn't survive in his file that went to Pelican Bay? No. Yes, sir. It's in his file. It's in his file now. It's part of the record in this case. Oh, then I think you may have misspoken, because as I heard you say, there was nothing in his file to indicate that he had ever been in protective custody. He wasn't in protective custody. He was not in protective custody. He was in administrative segregation. They are two separate things. I see. He's expected for his protection, but he wasn't, in fact, assigned to a protective custody yard. And the reason for that is twofold. First of all, he was a shot caller for the Bloods, and by his own admission, he had called shots or assaults on several of the inmates that were housed there. So he wasn't, in fact, in protective custody. He was, in fact, kept in custody away from the inmates that they believed would be a danger to him. One of the things that puzzles me about this case is that, as I understand what happened in the court below, the claim that survives, at least at this point against Mr. Boffman, is not for compensatory damages but merely for nominal damages. Because, at least as I understand what happened below, there's been a determination that there's no causal relation between Officer Boffman's action or inaction and the injuries he eventually suffered. Am I understanding the record correctly? Yes, you are, Your Honor. Are nominal damages available in this kind of a case? This Court hasn't specifically ruled with regard to an Eighth Amendment case. The Court's ruling in Oliver v. Keller is a Fourteenth Amendment case, and based on that case, the judge determined that because Mr. Boffman or Sergeant Boffman, even though he wasn't the actual and proximate cause of his physical injury, there was an allegation made during Mr. Lyons' deposition that he had gotten into cell fights with several of the inmates that had been housed on Facility B. He, meaning, I lost your antecedent.  Who got into cell fights? Lyons got in cell fights because, according to him, several of his comrades, as he calls them, part of the Bloods organization, were also transferred to Pelican Bay. And so when he arrived there, according to Mr. Boffman, in his deposition testimony only, stated that he was required to fight with these people on occasion. There were no physical injuries, so the only remaining damages that he could receive in this instance would be, excuse me, nominal and punitive damages. Could I ask just two very quick questions? I know you're into your time, but number one, you said at the beginning, I think, that there was, in response to Judge Nelson, that there was some customer practice to document threats of risk to inmates. Is that correct? Of which the officer knows, yes. Okay, and so if we were to construe the facts favorably to Lyons on his complaint, his position would be that Boffman knew that Lyons would be at risk having cooperated or having given false information to the black inmates. But he didn't enter any record of that into any kind of documentary file that would flow with Mr. Lyons throughout his continued prison stay. Is that correct? That was the holding by the district court. Right, okay. So now, and your position is, he didn't have to do anything, put any entry like that into the file because? For two reasons. First of all, he didn't have any actual knowledge that Mr. Lyons feared for his safety. But secondly, a reasonable officer in Sergeant Boffman's position, realizing that Mr. Lyons had already been placed in administrative segregation for his own protection, wouldn't believe or would believe that his fears had already been addressed. Well, I mean, administrative segregation isn't forever, is it? No, it's not. Okay. And then the second thing is, in the rules violation report, which is at ER 214, there's an interview on March 6, 1997, where the interviewer says, I interviewed Sergeant Boffman regarding the charges. And he stated that on the morning of September 27, 1996, he interviewed several black and Hispanic inmates. They assured him there were no problems between black and Hispanic population. I assume that that's a question of whether Boffman knew that there was going to be this riot. Is that correct? There's. That's fine. And then it says, he had no other relevant information to provide in this matter. Now, was there any inquiries, anything in the record, to indicate whether the investigator asked Boffman about potential risk to Lyons in that interview? There's nothing in the record, no. Okay. And so we don't know whether Boffman volunteered or didn't volunteer or didn't say, he obviously didn't trigger anything that wound up in this report, that Lyons was one of the people who had been interviewed by him and that he had told Lyons that there would be no problem. No. Okay. Thank you. Why don't we give you a minute on rebuttal? You've run over the time, but let's hear from you in response. May it please the Court, Shelby Pastorell, Wilson, Sonsini, Goodrich, and Rosati, representing the plaintiff appellee, Mr. Lyons. As counsel for the appellant outlined, there are two main issues presented by this appeal. The first issue is whether Mr. Lyons suffered an actionable injury under the Constitution that allows him to recover damages in this case. And the second is whether Officer Boffman is entitled to qualified immunity. The answer to both of those questions is clear. Mr. Lyons suffered an actionable injury, and Officer Boffman is not entitled to qualified immunity. For those reasons, this Court should affirm the decision of the lower court. Counsel says time is limited. May I just jump to the question of the reasonableness of Mr. Boffman not documenting the risk of retaliation that Lyons faced in due to the fact that he was in administrative segregation, admittedly for his protection first, but then later for, admittedly because he had been a victim, and then for his protection later. What requirement was it that the officer had to document what was happening? Your Honor, the cases are clear. Once an officer is aware of a substantial risk of serious harm to an inmate, they must do something in response to that risk. And as counsel for the appellant conceded earlier, it is standard procedure in the California prison system to document a risk to an inmate once an officer knows of that risk. So if Officer Bowman was indeed aware of the risk to Mr. Lyons' safety, he was obligated to do something to address that risk, to take preventative actions. What would be the preventative action he should have taken at the time? One preventative action would have been to document the risk. That's all he could have done on the facts of this case, isn't it true? Because, as counsel argued, what more would he have done other than document it, since at the time, right after the riot, Mr. Lyons was put in administrative segregation? Yes, Your Honor. The appropriate step would have been for him to document the risk. He could have taken other steps, for example, suggesting that there be a full inquiry into any possible threat. There's no evidence that he did anything in response.  If an officer knows of a substantial risk of serious harm, he must take some steps to address that harm. He cannot sit back and do nothing, which is what Officer Bowman did here. Okay. Can I then direct your so I get that circle closed? I asked counsel about the investigative report at ER 214. I won't read it again, but is there any, is counsel correct that there's no evidence to amplify on what's in that report as to what the interchange was between the investigative officer and Boffman as to any risk to Lyons? There's no evidence in this case, unfortunately. Mr. Lyons was representing himself pro se before the district court and didn't take any affirmative discovery, essentially. So the only evidence we have from Officer Boffman is a declaration that he submitted in support of his summary judgment brief, in which he makes no knowledge of any risk to Mr. Lyons or what he did or did not do in response to that knowledge, if he had it. Now, this investigative, I think it's called a violation report that Judge Fisher has just been referring to. Now, this is a report on violation or alleged, at that point, alleged violation by Lyons during the riot in the prison yard. Would it have been relevant to that inquiry whether Lyons feared for his own safety later from fellow inmates? It may or may not have been relevant to that particular inquiry, but it doesn't obviate the need for Officer Boffman to document the risk. I mean, maybe that was not the appropriate forum for him to raise that knowledge, but it doesn't get rid of the requirement that once he knows of a substantial risk to Mr. Lyons, he had to take preventative measures to prevent any harm to Mr. Lyons. I think I understand that answer. But that could mean that Officer Boffman may have been as forthcoming in this inquiry as he needed to be, given the nature of the inquiry. Yes, in that particular inquiry, but it doesn't... But you're saying the duty comes from something else. Yes, the duty does not come from the fact that he was being interviewed in a particular situation. It may have provided the perfect forum for him to have raised this knowledge, but he still had to take preventative measures in some way. What do you do with what I think is the holding below, that there's no causal relation between Officer Boffman's action and then inaction, and the compensable injuries that Mr. Lyons eventually suffers, and therefore the only thing that's still on the table is nominal damages plus punitive? What's become of this case if, in fact, what that tells me is that whatever duty Boffman might have had, it didn't cause him any harm. It's certainly an issue that I would urge my client to raise again before the District Court, because I think there is evidence of a causal link between Officer Boffman's inaction and the harms that Mr. Lyons suffered later in terms of the broken jaw and the slashed face. But would that require a reconsideration of the order already entered by the District Judge? Yes, Your Honor. May I ask a question, a procedural question? Should we even be considering the causal connection? Isn't the interlocutory appeal only on the question of qualified immunity? Yes, Your Honor. This Court has been very clear that on interlocutory appeals from denials of qualified immunity, the questions that the Court has jurisdiction to consider are the legal question as to whether the law was clearly established at the time the injury was created. So isn't this panel precluded from reviewing the issue of causation as a separate requirement for relief under the PLRA? Why are we talking about it? Did I ask a stupid question? No, you didn't ask a stupid question. No, you started out by saying there were two issues here. I almost interrupted you then, and I didn't. But is it appropriate for us to be talking about? Appellant is raising this issue, I believe, because their view is that there is no evidence to support a constitutional injury here, and this Court has a jurisdiction to say, as a legal matter, there is no constitutional injury in this case. Whether the court does not have jurisdiction to consider is whether the district court viewed the facts in the way in which the district court viewed the facts. If the district court found sufficient facts and there is evidence for what those sufficient facts were to support a constitutional injury, that finding cannot be before the court. But if there is no facts to support the district court's conclusion, that is something this Court can review, and I'm assuming that that's what appellant is addressing this issue before this Court. All right. Thank you. So your argument is that the duty to protect an inmate against harm from fellow inmates is clearly established law. Yes. That's step number one. And a reasonable officer in Sergeant Boffin's position knew or should have known that this danger was likely to eventuate and that he had an affirmative obligation to do what he could to make sure that the relevant people knew of this danger. Yes. He had an affirmative obligation to take preventative steps to prevent the harm from Mr. Lyons being exposed to this threat of harm. That's from this Court's decision in Berg. And what is your answer to the argument, but given that he was already in administrative segregation that was protecting him, why was it not reasonable for Officer Boffin to think that the problem had been taken care of? Officer Boffin had no knowledge as to how long Mr. Lyons may remain in administrative segregation and the risk was out there. And prison officials have a duty to document information in inmates' files to prevent future occurrence of harm. They have to document known enemies. They have to document situations where threat arises. And so the fact that Mr. Lyons may be temporarily protected from that threat does not obviate the need for Mr. – for Officer Boffin to document that risk so that going forward Mr. Lyons is appropriately housed within the California prison system. So, and part of your answer might be that, well, administrative segregation is, as your adversary has already told this Court, different from protective custody. And being in administrative segregation may protect him temporarily, but that's something quite different from protective custody. Yes, Your Honor. And I think the facts of this case show exactly the problem with the argument that he's okay at this particular moment, so therefore there's no need to document it. Mr. Lyons was okay at various moments throughout his stay in Sacramento, but the moment he was transferred, none of the information about the risk followed him to Pelican Bay and Salinas Valley. And so as a consequence, he was placed into the general population and directly in contact with the men who were out to get him. What's your strongest case in our circuit for putting Mr. Boffin on notice that he should have put something in the file about the suspected risk? I think the Berg case is particularly appropriate where the Court laid out a two-prong inquiry as to whether an officer has reacted appropriately to a threat to inmate safety. In that case, the very first question the Court asked is, did the officer take preventative measures? And it's uncontested here that Officer Boffin did nothing. And that clearly is not okay under a Berg. Even under the Farmer decision by the Supreme Court where they said that the central inquiry is whether or not an officer took steps despite knowing of a risk to inmate harm. So the fact that you can do nothing in those situations shows that no reasonable officer wouldn't believe that doing nothing was an appropriate response here. Okay. Thank you. Thank you very much. Thank you, Your Honors. Would you like a minute in rebuttal? The only thing that I would say in rebuttal is with regard to the inquiry, with regard to the constitutional violation and the qualified immunity analysis, they're two separate inquiries. And in both cases, or in the case of the qualified immunity analysis, it appears that both the district court and Appellee believe that it basically can stop at the Farmer analysis, that if an officer knows that there's a threat or a substantial risk of serious inmate or serious injury to the inmate, he has to take action. And while that's true, in the State of Ford, it went even further. You have to go beyond the generalized Eighth Amendment analysis of Farmer v. Brennan. You have to look at the circumstances in the case. And the Ford, the State of Ford court, this court in the State of Ford found that a reasonable prison official, even though he understood the risks, he could know all of the facts, but mistakenly and reasonably perceive that the exposure was not that great in the given situation. The tricky part of the case from your standpoint, it seems to me, includes the fact that not only was there some risk, but it was Officer Boffman who actually created the risk, because it was Boffman who originally goes to Lyons and says, hey, there's no problem, the Mexicans are not going to attack your guys. Lyons relies on this, tells these guys you're okay, and the attack immediately follows. So it's Lyons who produces the riot, or rather who produces the danger, doesn't produce the riot, but produces the danger to Lyons. Does that produce any particular duty on the part of Boffman, who's been the cause for Lyons himself being in particular danger, to make sure that he's protected against that danger? It would if he didn't believe already that Mr. Lyons was in fact protected. But how do you respond, in a sense, to your own answer to me, which is to say, well, he was only in administrative segregation. He was not in protective custody. And how can Officer Sergeant Boffman think that administrative segregation is sufficient protection? Well, with regard to Sergeant Boffman, even though it was never brought to his attention that Mr. Lyons feared for his safety, it was brought to a number of other prison officials that Mr. Lyons feared for his safety based on this. But the fear for his safety really is much more acute as soon as you know the story. That is to say, as soon as you know the reason he fears for his safety, is that he went back to his guys and said, you're safe. And as far as I can tell, Officer Boffman in the prison was the only person who knew that. Based on this record, that may be true. But it wasn't a prison riot that involved a couple hundred inmates. So there was a thorough and full investigation that came along afterward. But I'm talking about the specific danger to Mr. Lyons. The specific danger to Mr. Lyons comes from the fact that relying on what Officer Boffman told him, he went back and said to his guys, not a problem. But as far as I can tell, Officer Boffman never puts that in the administrative record so that the prison officials can understand the acute danger here. That's true. Thank you. Thank you very much. Thank you both. Thank you both for a helpful argument on both sides. Lyons v. Boffman is now submitted. The next case, Alexander v. Perez, has been submitted on the briefs. Why don't we hear the next case on the argument calendar, Holgate v. Baldwin, and at the end of that case, we'll take a ten-minute break. So I now call Holgate v. Baldwin, 15 minutes before the break.
judges: D.W. Nelson, W. Fletcher, Fisher